UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BARBARA REEDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:07-CV-00110 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Barbara Reeder appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

## I. PROCEDURAL HISTORY

Reeder applied for DIB in December 2003, alleging that she became disabled as of December 6, 2002. (Tr. 40-42, 61.) The Commissioner denied her application initially and upon reconsideration, and Reeder requested an administrative hearing. (Tr. 18-39.) On February 7, 2006, Administrative Law Judge (ALJ) John S. Pope conducted a hearing at which Reeder, who

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

was represented by counsel, Reeder's daughter, and a vocational expert ("VE") testified. (Tr. 263-96.)

On September 28, 2006, the ALJ rendered an unfavorable decision to Reeder, concluding that she was not disabled despite the limitations caused by her impairments because she could perform a significant number of jobs in the economy. (Tr. 12-17.)  The Appeals Council denied Reeder's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-8.)  Reeder filed a complaint with this Court on May 16, 2007, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II.  REEDER'S ARGUMENTS

Reeder alleges three flaws with the Commissioner's final decision.  Specifically, Reeder claims that: (1) the ALJ erred when determining that her testimony of debilitating limitations was "not entirely credible"; (2) the ALJ improperly evaluated the opinion of Dr. Lisa Lane, her treating family practitioner, that she would miss four or more days of work per month; and (3) the ALJ erred at step five by failing to cite a significant number of jobs that Reeder could perform.[2] (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 11-17.)

---

[2] Reeder also initially argued that the ALJ's step four finding was contradictory and not subject to meaningful judicial review; however, she abandoned this argument in her reply brief, stating that she accepts the explanation of the ALJ's step four finding advanced by the Commissioner in its response brief. (*See* Opening Br. 16; Reply Br. 3.)

### III.  FACTUAL BACKGROUND[3]

*A. Background*

At the time of the ALJ's decision, Reeder was forty-seven years old, had a high school education, and possessed work experience as a cashier, clerk, and sewer. (Tr. 40, 66, 105, 292-93.)  Reeder stopped working in 2002 when she was laid off from her job. (Tr. 270.)  Reeder alleges that she became disabled as of December 6, 2002, due to osteoarthritis of both knees, low back problems, obesity, hypothyroidism, hypertension, coccygeal inflammation, a mild bilateral pes plinus, and asthma. (Opening Br. 2.)

At the time of the hearing, Reeder lived in a one-story home with her husband and seventeen-year-old son, and her adult daughter visited her almost every day.[4] (Tr. 268, 289.)  Reeder reported that she independently performs her dressing and bathing and that she drives a car, though she often takes one of her family members with her when she goes shopping and has to rest frequently during outings. (Tr. 278, 285, 289-90.)  Her typical day includes doing household chores, resting, and watching television. (Tr. 276-77.)  She states that she has to take frequent breaks because of her low endurance for physical activity, explaining that "it could take [her] probably mostly all day to get one floor done." (Tr. 277, 287.)

As to her physical status, Reeder reported that she is 5'7" tall and weighs "like 370, 390" pounds. (Tr. 269.)  When asked what medical conditions affect her ability to work, Reeder stated: "Just the arthritis and the shortness of breath and not being able to stand and sit[,]"

---

[3] The administrative record in this case is voluminous (296 pages), and the parties' disputes involve only small portions of it.  Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

[4] Reeder's daughter also testified at the hearing and essentially corroborated Reeder's testimony with respect to her poor endurance for activity, stating that "she can't really do much of anything." (*See* Tr. 289-90.)

3

explaining that her arthritis is primarily centered in her back, tailbone, both knees, and left ankle. (Tr. 271-72, 279.)  She reported that her back pain is a "sharp pain" that she experiences "all the time" but that her knee pain "isn't too bad," stating that her knees bother her "not too much every day." (Tr. 280.)  Reeder elaborated that her pain worsens with activity and that sitting in a recliner or lying in bed relieves it. (Tr. 281.)  Reeder further stated that in an eight-hour workday she could walk two hours, that is "maybe 10, 15 minutes" every hour; stand for one hour; and sit for "maybe three" hours. (Tr. 282.)  Reeder also reported that her hands get "stiff and sore" from arthritis, which limits her activity somewhat, stating that she can only crochet for about two hours at a time. (Tr. 286.)  She stated that she takes a variety of medications for her conditions, which helps make the pain "a little more bearable," experiencing no side effects from them. (Tr. 274-75.)

## B.  *Summary of the Medical Evidence*

In March 2001, Reeder complained to Dr. Lisa Lane, her family practitioner, of increasing knee pain. (Tr. 178.)  On examination, her knees exhibited crepitus bilaterally and tenderness at the subpatellar tendon. (Tr. 178.)  Dr. Lane diagnosed her with patellar tendinitis and recommended that she wear bilateral knee braces while at work. (Tr. 178.)

One month later, Reeder returned to Dr. Lane, who prescribed Vioxx for her. (Tr. 219.)  An x-ray of her left knee showed mild degenerative changes involving the medial tibial femoral joint. (Tr. 219.)  In October 2001, Dr. Lane wrote a letter to Reeder's insurance administrator seeking approval of the weight loss drug, Meridia, for Reeder, explaining that Reeder's body mass index was greater than fifty, which in her opinion was dangerous for her health. (Tr. 176.)  On that same date, Reeder told Dr. Lane that the Vioxx was helping her knees but that she was

4

still having some low back pain. (Tr. 175.)  She stated that she wanted to lose weight but that she was not really sure how to do so, reporting that she does not over-eat and gets as much exercise as she can. (Tr. 175.)

In January 2002, Reeder reported to Dr. Lane that she had joined Weight Watchers and had lost five to six pounds. (Tr. 174.)  By June 2002, Reeder had reduced her weight to 349 pounds. (Tr. 173.)  One month later, however, she told Dr. Lane that she had not lost much weight since her June visit, stating that she had been "off her diet for a little bit with Summer activities." (Tr. 173.)  In December 2002, Reeder had a hysterectomy; her hospital records indicated that she weighed 362 pounds at the time. (Tr. 119-20, 124.)

In June 2003, Reeder complained to Dr. Lane of pain in her back and sacral area, yet she was not noticeably tender to palpation; she weighed 385 pounds at the time. (Tr. 169.)  Dr. Lane diagnosed her with coccygeal inflammation of unknown etiology. (Tr. 169.)  In September 2003, an x-ray showed a deformity involving the distal sacrum that was possibly related to remote trauma. (Tr. 208.)

In October 2003, Reeder was seen by Dr. Lane for shortness of breath, explaining that she had recently went to the emergency room for a rapid heart rate but that her testing came back normal. (Tr. 144, 168.)  A chest x-ray was normal, and she was given an inhaler to use as needed. (Tr. 145, 204.)  One month later, Dr. Lane noted that Reeder had hypothyroidism and adjusted her medication. (Tr. 168.)

On November 3, 2003, at the request of Dr. Lane, Reeder visited Dr. Kenneth Smith, a rheumatologist, for her low back pain and knee discomfort. (Tr. 132-33.)  During the examination, Reeder moved freely without assistance, though she had mild patellar-femoral

5

crepitus. (Tr. 132.)  He noted that her right knee was more involved than her left and that her deep knee bending was thirty percent of normal and accompanied by severe anterior knee pains; her knees were otherwise normal. (Tr. 132.)  His examination of her feet revealed mild bilateral pes planus, and her back examination showed a straight non-tender spine with full painless movement in all directions. (Tr. 132.)  She could walk without assistance, but did need help going up and down one step to the examination table. (Tr. 132.)  A lumbar spine x-ray revealed minimal degenerative spondylosis and moderate facet osteoarthritis, but it was otherwise negative with no subluxation and fairly well-maintained disk spaces. (Tr. 196.)  Dr. Smith thought that Reeder's pain was secondary to degenerative arthritis and her excessive weight, finding no evidence of underlying inflammatory rheumatic disease. (Tr. 132.)  He recommended that she consult a dietician and encouraged her to lose as much weight as possible, stating that it would be of great benefit to the degenerative changes in her knees and spine. (Tr. 132.)  He also recommended that she continue taking Naprosyn or another nonsteroidal drug. (Tr. 132.)

In December 2003, Dr. Lane saw Reeder for her chronic hypothyroidism. (Tr. 167.)  She noted that Reeder was having difficulty maintaining her weight loss in that she thought Reeder might have gained back forty pounds of the weight previously lost. (Tr. 167.)  Dr. Lane offered to set up an appointment with a dietician but Reeder stated that she was not interested at that time. (Tr. 167.)

On January 16, 2004, Dr. A. Lopez, a state agency physician, completed a Physical Residual Functional Capacity Assessment on Reeder's behalf. (Tr. 148-55.)  Dr. Lopez found that Reeder could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour

6

workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; and needed to avoid concentrated exposure to machinery and heights. (Tr. 148-55.)  Dr. Lopez's opinion was later affirmed by another state agency physician. (Tr. 155.)  A pulmonary function test was also done at the request of the Social Security Administration on February 16, 2004, the results of which were normal. (Tr. 134-35.)

In March 2004, Reeder visited Dr. Lane after recently having been to the emergency room for shortness of breath and tachycardia. (Tr. 166.)  Dr. Lane thought that the shortness of breath and bronchospasm might be adult onset asthma or sleep apnea, and thus she ordered a pulmonary function test, together with other testing for hyperglycemia. (Tr. 166.)

In June 2004, Reeder saw Dr. Lane for increased swelling, explaining that it was difficult for her to even walk at one point. (Tr. 246.)  On examination, Reeder's extremities had lower extremity edema but no pitting. (Tr. 246.)  Dr. Lane adjusted Reeder's medication and assigned her a diagnosis of left axillary cellulitis, arthritis, and edema. (Tr. 246.)

In November 2004, Dr. Lane completed paperwork at Reeder's request regarding her limitations and her illness, noting that Reeder's primary problems were the inflammation of her back and coccygeal region. (Tr. 164.)  She also noted that Reeder had a history of hypothyroidism and asthma, and that her arthritic knees inhibited some activity. (Tr. 164.)  On examination, Reeder exhibited full range of motion of her neck, there were no wheezes in her lungs, and her heart had a regular rate and rhythm. (Tr. 164.)  She was able to bend and stoop, though she was not able to hold that position for long, and she had some tenderness in her low back area. (Tr. 164.)  Dr. Lane concluded that Reeder had chronic back and knee osteoarthritis that inhibited her ability to work full-time. (Tr. 164.)

7

That same month, Dr. Lane also completed a Medical Source Statement, stating that Reeder was diagnosed with back and knee osteoarthritis, hypothyroidism, and asthma. (Tr. 222-26.) She noted that Reeder's symptoms included back and tailbone pain, shortness of breath, and swelling, and that her clinical findings and objective signs were slow gait, pain with bending and squatting, and reduced range of motion of the back and legs. (Tr. 222.) With respect to her treatment, Dr. Lane noted that Reeder's response to anti-inflammatory drugs was poor and that she was unable to complete physical therapy due to pain. (Tr. 222.) Dr. Lane opined that in an eight-hour workday Reeder could sit for six hours and stand or walk for two hours, provided that she could change positions at will; would need to take unscheduled breaks; could lift and/or carry twenty pounds occasionally; could rarely twist and could never stoop, crouch, or climb; could not look up or down, hold her head in a static position, or turn her head more than rarely; and that she would miss more than four days a month of work due to her medical condition. (Tr. 222, 225.)

Dr. Lane saw Reeder again in December 2004 for joint pain. (Tr. 164.) Reeder told Dr. Lane that Lodine no longer took care of the problem and that she had more upper body problems in the thoracic spine and arms than in her lower body. (Tr. 164.) On examination, Reeder's extremities were noticeably obese but there was no obvious edema. (Tr. 164.) Dr. Lane adjusted her medication. (Tr. 164.)

In November 2005, Reeder visited Dr. Lane, reporting that she had recently experienced chest discomfort and that she had visited the emergency room and was told to use her inhaler, which seemed to help. (Tr. 238.) Dr. Lane's assessment was sinusitis with asthma and chest discomfort, though she was concerned about cardiac disease due to Reeder's obesity. (Tr. 238.)

8

Reeder saw Dr. Lane again in March 2006 for a medication refill and for a concern about her legs; Dr. Lane, however, noted no evidence of inflammation or erythema upon examination. (Tr. 237.)

## IV.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## V.  ANALYSIS

### A.  *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in

9

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] *See* 20 C.F.R. § 404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B.  The ALJ's Decision

On September 28, 2006, the ALJ rendered his opinion. (Tr. 12-17.)  He found at step one

---

[5] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

of the five-step analysis that Reeder had not engaged in substantial gainful activity since her alleged onset date and at step two that her obesity, osteoarthritis of the knees, spondylosis of the lumbar spine, and facet osteoarthritis of L4-5 and L5-S1 were severe impairments. (Tr. 14.) However, he found that her asthma was not a severe impairment. (Tr. 14.)   At step three, he determined that Reeder's impairment or combination of impairments was not severe enough to meet a listing. (Tr. 14-15.)  Before proceeding to step four, the ALJ found Reeder's subjective complaints "not entirely credible" and assigned her the following RFC:

> [T]he claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; sit about six hours in a eight-hour workday; stand/walk about two hours in an eight-hour workday; never climb ladders, ropes or scaffolds and balance; occasionally climb, balance, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to hazards.

(Tr. 15.)

Although the VE testified that Reeder was capable of performing her past relevant work as a clerk as she performed it at the sedentary exertional level, the ALJ determined at step four that Reeder was unable to perform any of her past relevant work. (Tr. 16.)  The ALJ then concluded at step five that Reeder could perform a significant number of jobs within the economy, including maid (450 jobs), mail sorter (375 jobs), and office helper (1,300 jobs). (Tr. 17.)  Therefore, Reeder's claim for DIB was denied. (Tr. 17.)

### C.  The ALJ Erred When Analyzing the Credibility of Reeder's Complaints

Reeder asserts that the ALJ erred when he dashed the credibility of her testimony of debilitating limitations for the sole reason that she "had not lost a significant amount of weight." (Tr. 15-16.)  More precisely, Reeder contends that the ALJ should not have discredited her on this basis without first inquiring, in accordance with Social Security Ruling 96-7p, into the

11

reasons why she failed to follow her physicians' advice to lose weight. (Opening Br. 13-16.) Reeder's argument ultimately has merit.

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . .").

In reaching his credibility determination, the ALJ first summarized the recommendations by Dr. Lane and Dr. Smith that Reeder should lose weight and then stated:

> As of the date of the hearing in February 2006, the claimant had not lost a significant amount of weight. These factors further impact negatively upon the claimant's credibility regarding the severity of her impairments as her actions amount to noncompliance. While not a factor to negate a finding of disability, noncompliance is [a] credibility factor.

(Tr. 15-16 (internal citations omitted).) Thus, the ALJ rested his determination that Reeder was not entirely credible on *just one* reason – that Reeder had not followed her doctors' advice to lose weight.

Indeed, Social Security Ruling 96-7p states that a claimant's testimony may be less credible if "the medical reports or records show that the individual is not following the treatment

12

as prescribed and there are no good reasons for this failure."  However, it further cautions that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment *without first considering any explanations that the individual may provide, or other information in the case record*, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p; *see Ellis v. Barnhart*, 384 F. Supp. 2d 1195, 1203 (N.D. Ill. 2005) ("[T]he ALJ could rely on [the claimant's] non-compliance as long as he had first considered [the claimant's] explanations for her non-compliance."); *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1097 (E.D. Wis. 2001).

  Here, the ALJ never asked Reeder any questions about her attempts to lose weight or her obesity; thus, he failed to consider any explanations that Reeder may provide about her attempts to lose weight and comply with her doctors' advice. *See Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004) (stating that the ALJ "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner"); *Brennan-Kenyon v. Barnhart,* 252 F. Supp. 2d 681, 697 (N.D. Ill. 2003) (remanding case where the ALJ failed to adequately develop the record concerning the claimant's reasons for not seeking medical treatment); *Anderson v. Barnhart*, No. 01 C 5083, 2002 WL 314410, at *9 (N.D. Ill. Feb. 28, 2002) (same).  Furthermore, in contrast to the ALJ's statement, Reeder *did* lose a significant amount of weight, that is, approximately thirty-five pounds, at one point in time through the Weight Watchers program; unfortunately, she later gained it back.

  Nor is there any evidence that suggests the ALJ considered possible explanations in the

13

record for Reeder's failure to follow her doctors' advice to lose weight. *See Conner v. Barnhart*, No. 1:04CV0469-JDT-TAB, 2005 WL 1939951, at *5 (S.D. Ind. June 28, 2005) "[U]nder SSR 96-7p and related case authority, the ALJ has a duty to investigate reasons of non-compliance when determining the credibility of a claimant."). For example, the ALJ never mentioned Reeder's diagnosis of hypothyroidism. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) (noting in that instance that claimant's obesity was due not to gluttony but to hypothyroidism). Likewise, though the ALJ stated that Dr. Lane had prescribed Meridia, a weight loss drug, there is no indication in the record that Reeder's insurance company ever approved it in response to Dr. Lane's appeal for coverage; thus, it is reasonable to infer from the record that Reeder may not have been able to afford the prescription. *See Herron v. Shalala*, 19 F.3d 329, 336, n.11 (7th Cir. 1994) ("Lack of discipline, character, or fortitude in seeking medical treatment is not a defense to a claim for disability benefits."); *Neave v. Astrue*, No. 07-C0301, 507 F. Supp. 2d 948, 964 (E.D. Wis. Aug. 31, 2007) ("Courts have regularly held that inability to afford treatment constitutes a good reason for not seeking it.") (collecting cases).

Admittedly, as the Commissioner points out, two statements by Reeder in the record may suggest that perhaps there was no good reason for her noncompliance with her doctors' advice to lose weight. In January 2002, she told Dr. Lane that "she has been off her diet for a little bit with Summer activities" and in December 2003, that she was not interested in making an appointment with a dietician. (Tr. 167, 173.) Nonetheless, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision and confine our review to the reasons supplied by the ALJ." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Here, the omission of any

14

discussion or inquiry about the possible explanations for Reeder's failure to lose weight leaves the Court to wonder whether the ALJ considered the various possibilities at all. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005) ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (opining that when probative evidence is left unmentioned by the ALJ, the court is left to wonder whether it was even considered)*; Nelson v. Barnhart*, No. 06-C-249-C, 2006 WL 3042954, at *8 (W.D. Wis. Oct. 24, 2006) ("[W]hen making a credibility determination, the ALJ must ground in the record any adverse conclusion he draws from the effects of and reasons for a claimant's failure to comply with recommended treatment.").

Significantly, this is not a case where a claimant's failure to follow treatment was just one of several reasons provided by the ALJ for discounting a claimant's credibility. *See, e.g.*, *Nelson v. Barnhart*, No. 06-C-249-C, 2006 WL 3042954, at *4, 7-9 (W.D. Wis. Oct. 24, 2006); *Krontz v. Barnhart*, No. Civ. 1:01CV322, 2002 WL 32072796, at *9 (N.D. Ind. Mar. 26, 2002.) Here, Reeder's failure to follow her physicians' advice to lose weight is *the only reason* provided by the ALJ to discount the credibility of her testimony. Consequently, the ALJ's failure to follow Social Security Ruling 96-7p cannot be definitively viewed as harmless.[6]

In sum, the ALJ erred by discounting Reeder's credibility without first exploring why Reeder may have failed to follow her doctors' recommendation to lose weight. As a result, the

---

[6] Even though the Commissioner did incorporate significant limitations into Reeder's RFC based on her obesity, he rejected Reeder's assertion that she could only walk two hours, stand one hour, and sit for three hours during an eight-hour workday, as well as Dr. Lane's opinion that Reeder needed a sit-to-stand option and unscheduled breaks when performing sedentary work. Therefore, the ALJ's error concerning Reeder's credibility determination could indeed impact whether a significant number of jobs would be available to Reeder at step five.

case will be remanded so that the ALJ may reassess the credibility of Reeder's complaints in accordance with Social Security Ruling 96-7p.[7] *See Brindisi*, 315 F.3d at 787 ("In evaluating the credibility of statements supporting a Social Security application, we have noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p.").

## VI.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.  The Clerk is directed to enter a judgment in favor of Reeder and against the Commissioner.

SO ORDERED.

Enter for this 19th day of March, 2008.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[7] Consequently, the Court need not reach Reeder's remaining two arguments – that the ALJ improperly evaluated the opinion of Dr. Lane that Reeder would miss four or more days of work per month and that the ALJ erred at step five by failing to cite a significant number of sedentary jobs that Reeder could perform.  Nevertheless, upon remand the ALJ should correct the two blatant errors in his decision, whether ultimately harmless or otherwise, that gave rise to these two arguments, that is, his mischaracterization of Dr. Lane's opinion concerning Reeder's expected rate of absenteeism and his mis-statement at step five concerning the specific jobs that Reeder could perform.